**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benjamin Thomas TISDALE,
III, Defendant–Appellant.**

**No. 92–6109.**

United States Court of Appeals,
Tenth Circuit.

Oct. 18, 1993.

Susan M. Otto, Acting Federal Public Defender, Oklahoma City, OK, for defendant-appellant.

Arlene Joplin, Asst. U.S. Atty. (Timothy Leonard, U.S. Atty., with her on the briefs), Oklahoma City, OK, for plaintiff-appellee.

Before ANDERSON and EBEL, Circuit Judges, and LUNGSTRUM,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

This case is before us a third time to review the sentence imposed upon Benjamin Tisdale following his conviction of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).[1] By virtue of that conviction and his prior criminal record, Tisdale is classified as an armed career criminal, subject by statute to a mandatory minimum sentence of 15 years in prison. 18 U.S.C. § 924(e)(1).[2] The district court initially sentenced Tisdale to 30 years. We remanded for resentencing because the court's stated reasons for the sentence were insufficient for appellate review. *United States v. Tisdale*, 921 F.2d 1095, 1100–01 (10th Cir.1990).

In the interim, the United States Sentencing Commission amended the Sentencing Guidelines to implement the mandate of Congress expressed in § 924(e) by including in the guidelines a category for armed career criminals. United States Sentencing Commission, *Guidelines Manual*, § 4B1.4 (Nov. 1990). At Tisdale's resentencing the district

---

* The Honorable John W. Lungstrum, United States District Court for the District of Kansas, sitting by designation.

1. Section 922(g)(1) provides in pertinent part: It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition....

2. 18 U.S.C. § 924(e)(1) provides:
In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

court drew an analogy to the amended guidelines and sentenced Tisdale to 21.8 years (262 months) in prison, a sentence within the range prescribed by the guidelines as amended.

On appeal, Tisdale contends that "the district court's upward departure from the 15 year mandatory minimum sentence was error as a matter of law"; and, that "the district court's use of U.S.S.G. § 4B1.4 deprived [him] of his liberty in violation of the *ex post facto* clause of the Constitution." Appellant's Brief at ii. We disagree with those contentions, and affirm the sentence imposed by the district court.

## BACKGROUND

The underlying facts of this case are set forth in our prior opinion and are repeated here only as relevant. Mr. Tisdale committed the instant offense on December 4, 1987. He was initially sentenced on August 23, 1988, to a 30–year term of imprisonment followed by a two-year term of supervised release. He was fined $1.00 and ordered to pay the $50.00 mandatory special assessment. The district court reconvened the sentencing hearing on October 20, 1988, in order to change the terms of the fine imposed. At the reconvened sentencing hearing the district court sentenced Mr. Tisdale again to a term of 30 years in prison, followed by a two-year term of supervised release, but changed the fine imposed to $25,000. Mr. Tisdale was also ordered to pay the $50.00 mandatory special assessment. We consolidated Tisdale's appeals of his conviction, sentence, and resentence, and affirmed the district court on all issues with the exception of the sentence itself. We vacated the sentence and remanded the case for resentencing in accordance with the steps outlined in U.S.S.G. § 1B1.1 and § 5G1.1(b), along with the court's reasons for its upward departure, if any, upon resentencing. We also directed the district court to reconsider the $25,000 fine in light of the statutory language that the fine imposed under § 924(e)(1) shall not be more than $25,000. *Tisdale*, 921 F.2d at 1100–01.

On remand from this court, the district court directed the preparation of a revised presentence report. In preparing the pre-

sentence report, the probation officer concluded that U.S.S.G. § 4B1.4 ("Armed Career Criminal") was not applicable because it was an amendment to the guidelines, effective November 1, 1990, subsequent to the date of Tisdale's offense of conviction. The probation officer determined the base offense level by applying U.S.S.G. § 2K2.1(a)(2), relating to offenses committed under § 922(g)(1). The base offense level under that guideline was nine. Pursuant to U.S.S.G. § 4A1.1 the probation officer fixed Tisdale's criminal history category at V based upon a calculation of 11 points from Tisdale's prior criminal record. The resulting guideline range was 18 to 24 months, substantially below the statutory minimum sentence of 15 years. Accordingly, the presentence report fixed Tisdale's guideline sentence at 180 months, or 15 years, as prescribed by U.S.S.G. § 5G1.1(b) (Nov. 1987), which provided that "[i]f application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the guideline sentence."

There is no disagreement over the fact that Tisdale's criminal history category, calculated in accordance with U.S.S.G. § 4A1.1, is V, as shown in the presentence report. There is also no dispute over the fact, noted by the probation officer in the presentence report, that Tisdale's criminal history category underrepresents the seriousness of his criminal conduct. The summary of Tisdale's criminal history contained in the presentence report shows numerous instances of criminal conduct which, for various reasons not related to culpability, did not proceed to the point of a conviction.

■ After receipt of the presentence report the court gave notice to Tisdale that it intended to depart upward from the 15–year sentence established under § 5G1.1(b), which reflected the Armed Career Criminal Act (ACCA) statutory minimum. After a two-week continuance the court then held a sentencing hearing, at the conclusion of which it sentenced Tisdale to 262 months. In granting the two-week continuance, the district court informed Tisdale that its reasons for

contemplating an upward departure from the 15–year statutory minimum were as follows:

First, we don't have a single weapon but we have three weapons.

Second, they're not just sitting about in an arms rack, or the like, but they're actually loaded, all of them.

Third, we have an abundance of evidence, from which the circumstantial conclusion follows, that Mr. Tisdale was conducting an illicit drug-related enterprise in his cottage; and that the weapons were present and loaded in protection of the illicit enterprise.

And fourth, although this is not nearly as serious as the other three, the factor that Mr. Tisdale jumped out of the window and fled when apprehension was attempted by Marshal Tsoodle.

R. Vol. III at 7–8. At the sentencing hearing, the district court made explicit that an additional, and obviously important, reason for departing upward· from the statutory minimum was that "the guidelines at the time omitted the big one ... the Armed Career Criminal Act." *Id.* at 27.[3] The court also mentioned the "potentiation" or combination of the enumerated four factors.

The court also stressed the fact of Tisdale's severe criminal history, unaccounted for in the calculation of any relevant guideline range. R. Vol. III at 30. Summarizing its views on this point the court stated:

[I]n all [the] time since the guidelines came into effect I have departed upward rarely.

And the fact that it's done in this case indicates my view of the gravity of this case, of the nature of the life of Mr. Tisdale, and the necessity for the protection of society that he be imprisoned as an end in itself so that he's not about on the streets committing more offenses.

R. Vol. III at 33.

## DISCUSSION

### I.

*A. Standards of Review.*

 We review a sentencing court's upward departure in three steps. *United States v. Flinn,* 987 F.2d 1497, 1500 (10th Cir.1993); *United States v. St. Julian,* 966 F.2d 564, 567 (10th Cir.), *cert. denied sub nom,* — U.S. —, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992); *United States v. White,* 893 F.2d 276, 277 (10th Cir.1990). First, we determine whether the circumstances cited by the district court warrant a departure from the guidelines as a matter of law. *White,* 893 F.2d at 277. Second, we review the court's factual determinations underlying the asserted justification for departure to determine if they are supported by the record. *Id.* at 278. Third, we determine whether the degree of departure is reasonable. *Id.;* see 18 U.S.C. § 3742(e)(3). Because Tisdale makes no challenge to the underlying factual determinations, we consider only the first and third elements—whether a departure was warranted and whether the degree of departure was reasonable.[4]

---

**3.** The district court granted the two-week continuance of the sentencing proceeding to satisfy the requirement that the defendant be given notice of a proposed upward departure "on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government." *Burns v. United States,* — U.S. —, —, 111 S.Ct. 2182, 2185, 115 L.Ed.2d 123 (1991). Tisdale argues for the first time in his reply brief that he was not given notice of the additional ground of the omission of the category of ACCA offenders: "when the district court gave notice of the bases on which it intended to depart, the Sentencing Commission's so-called 'failure' to promulgate a guideline specifically addressing the Armed Career Criminal Act was not mentioned." Appellant's Reply Brief at 2. To the extent Tisdale is arguing that he was never given notice of this proposed basis for departing upward from 15

years, we point out that he never objected, on lack of notice grounds, to the district court's evident reliance on that factor at sentencing, nor did he seek a second continuance on that basis, nor did he raise it as an issue on appeal or in his opening brief. Moreover, no one argues that anyone involved in this case was unaware of the fact of the omission of the category of ACCA offenders from the guidelines applicable to Tisdale; thus, no prejudice has been shown. Furthermore, we are not obliged to address issues raised for the first time in a reply brief. *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 887 (10th Cir.1991).

**4.** The Supreme Court has recently formulated a two-step departure analysis in *Williams v. United States,* — U.S. —, —, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992):

## B. *Decision to Depart.*

■ We consider first whether a departure is warranted. A sentencing court may depart from the guideline sentence only if it " 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " *White*, 893 F.2d at 277–78 (quoting 18 U.S.C. § 3553(b)). Where departure is based on factors that are considered by the guidelines, the sentencing court cannot depart unless it finds that consideration to be inadequate in light of unusual circumstances. *United States v. Smith*, 930 F.2d 1450, 1454 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Dean*, 908 F.2d 1491, 1496 (10th Cir.1990) (citing U.S.S.G. § 5K2.0). We review de novo whether the district court justified its decision to depart by citing appropriate circumstances. *United States v. Thornton*, 922 F.2d .1490, 1493 (10th Cir.1991).

■ Title 18 U.S.C. § 3553(a)(4) directs that the district court, when imposing sentence, shall consider "the *sentencing range* established for the applicable category of offense committed by the *applicable category of defendant* " as set forth in the guidelines (emphasis added). Section 3553(b) requires the district court to impose sentence within the *range* referred to in § 3553(a)(4), unless the Sentencing Commission in formulating the guidelines did not adequately consider a circumstance which should result in a sentence outside that range.

Prior to the promulgation of § 4B1.4, the guidelines did not implement the Armed Career Criminal Act, § 924(e), and, therefore, did not provide a sentencing range for defen-.

First, was the sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines? If so, a remand is required under § 3742(f)(1). If the court concludes that the departure is not the result of an error in interpreting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range? If so, a remand is required under § 3742(f)(2).

dants falling in that category. U.S.S.G. § 4B1.4, comment. (backg'd.) ("this section implements 18 U.S.C. § 924(e)"). Certainly the statutory minimum sentence of 180 months, converted to the "guideline sentence" under the general provisions of § 5G1.1(b) did not constitute a guideline range. *See United States v. Simmons*, 924 F.2d 187, 189–91 (11th Cir.1991).

In light of those facts, the district court did not incorrectly apply the guidelines or violate the law when it decided to "depart" from the minimum sentence of 180 months. The court expressly cited the omission from the guidelines of the armed career criminal category, R. Vol. III at 27, and Tisdale's severe criminal history, *id.* at 30, 33 (which, e.g., at criminal history category V under the guidelines, exceeds the presumptive category of IV under § 4B1.1 as a result of the three predicate convictions element of § 934(e)). It is beyond dispute that those are circumstances not taken into consideration by the Commission in formulating the guidelines. In addition, the court cited as factors Tisdale's possession of three loaded weapons, his conduct of an illicit drug-related enterprise and use of the weapons to protect the enterprise, and his flight to avoid apprehension. R. Vol. III at 7–8. None of those factors are necessary for the minimum statutory punishment, i.e., the "guideline sentence," as an armed career criminal. Not having been considered, they are valid grounds for "departure," if for no other purpose than finding a place within an appropriate guideline range, once one is established.

■ Thus, in the exercise of our review under 18 U.S.C. § 3742(f)(1), we hold that the district court's departure from the guidelines did not violate the law or incorrectly apply the guidelines.[5]

We have recognized that the Supreme Court's formulation in *Williams* does not change our three-step departure analysis, which we continue to use. *Flinn*, 987 F.2d at 1500; *St. Julian*, 966 F.2d at 568. The first and third steps of our three-part analysis parallel the two-part *Williams* test, while the second step of our analysis is simply a statement of our traditional appellate responsibility to review the factual predicate for the district court's ruling.

5. A sentencing court's use of an invalid depar-

## C. *Degree of Departure.*

■ We turn, therefore, to the question of whether the degree of departure was reasonable. *Flinn,* 987 F.2d at 1501; *United States v. Jackson,* 921 F.2d 985, 989 (10th Cir.1990) (en banc); *White,* 893 F.2d at 278. In answering that question, we consider the following:

"[T]he district court's proffered justifications, as well as such factors as ... the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities."

*Jackson,* 921 F.2d at 989 (quoting *White,* 893 F.2d at 278) (citing 18 U.S.C. § 3742(e)(3); 18 U.S.C. § 3553(a)). We have recognized that ordinarily, a district court must "premise its departure on the guidelines' deficiency in assigning a defendant a particular offense level, criminal history category, or both, [and] also must explain a departure sentence in these terms." *Jackson,* 921 F.2d at 990.

■ However, we note that this is not an ordinary departure case. In the typical departure case, the sentencing court starts with a guideline range and carefully calculates a sentence with reference to the guidelines and the "sentencing pattern" of the guidelines. *White,* 893 F.2d at 278. Here, by contrast, the sentencing court had a statutory minimum sentence to which no guideline range corresponded because the category of offenders (ACCA offenders) to which the statutory minimum applied was simply omitted from the guidelines.

The court was therefore faced with the difficult task of integrating two fundamentally different sentencing paradigms—a mandatory statutory minimum and the guidelines. The two do not mesh by concept or arrangement. Statutory minimums applicable to all offenders are irreconcilable with the carefully constructed guideline punishment structure of offense behavior and offender characteristics reflected in the grids. The abundant literature on the difficulties that mandatory minimums create for the Commission and the guidelines attests to the problem of requiring sentencing courts to devise proportionate and non-disparate sentencing analogies between statutory sentences and the guidelines. *See, e.g.,* The Hon. Orrin G. Hatch, *The Role of Congress in Sentencing: The United States Sentencing Commission, Mandatory Minimum Sentences, and the Search for a Certain and Effective Sentencing System,* 28 Wake Forest L.Rev. 185 (1993); The Hon. William W. Wilkins, Jr., et al., *Competing Sentencing Policies in a "War on Drugs" Era,* 28 Wake Forest L.Rev. 305 (1993); United States Sentencing Commission, Special Report to Congress, Mandatory Minimum Penalties in the Federal Criminal Justice System (1991) (legislatively mandated minimum sentencing provisions are incompatible with the sentencing guideline system); Letter from Chairman Wilkins to the Senate Judiciary Committee Concerning Mandatory Minimums, Fed.Sent.Rep. Vol. 3, No. 2 at 103; Report of the Federal Courts Study Committee, Fed.Sent.Rep. Vol. 2 at 233 (Mandatory minimums "inhibit the efforts of the Sentencing Commission to fashion a comprehensive and rational sentencing system, for the Commission must adjust its guideline ranges to accommodate the legislatively created minima.").

In such a situation, the sentencing court can either adopt a guideline range for the omitted category, bearing in mind the statutory minimum sentence, or explain a departure with reference to the general purposes of sentencing. The district court's imposition of a 262–month sentence is justifiable under either theory.

___

ture ground is an incorrect application of the guidelines. *Williams,* — U.S. at —, 112 S.Ct. at 1119. However, such an incorrect application of the guidelines requires a remand only if the sentence was imposed "as a result of" the incorrect application. *Id.* at —, 112 S.Ct. at 1120. We need not remand if we find that the district court still would have imposed the same sentence in the absence of the invalid factors, unless we find that the degree of departure is unreasonable. *See id.* at —, 112 S.Ct. at 1120; *United States v. O'Dell,* 965 F.2d 937, 939 (10th Cir.1992). Thus, even if the district court cited an invalid factor for departure in this case, we still would not remand since the history of this case and the record before us convince us that the district court would impose the same sentence without regard to any such factor.

### 1.

As indicated, in dealing with an omitted category of offenders (ACCA violators), as here, to whom a mandatory statutory minimum applies, a sentencing court may explain its upward departure in terms of the most appropriate guideline *range* for the omitted category. The only imperative in adopting that range is the statutory minimum of 180 months, or 15 years.[6] Thus, when the Commission promulgated § 4B1.4, it adopted, as the lowest acceptable range, level 33, History Category IV: 188–235 months. U.S.S.G. § 4B1.4(b)(3)(B) and (c)(3). This approach was described in the guidelines prior to the promulgation of § 4B1.4. In the commentary to § 2D1.1, the Commission stated: "The base offense levels at levels 26 and 32 *establish guideline ranges with a lower limit as close to the statutory minimum as possible.*" U.S.S.G. § 2D1.1, comment. (backg'd.). Both levels were *above* the statutory minimum. Such an approach is obviously the most appropriate way to fit the statutory minimum into the existing sentencing table without structurally compromising either. That is in fact what the district court did in this case.

Once the *range* of level 33, History Category IV (188–235 months), is recognized as the only rational integration of the congressionally mandated armed career criminal category into the guidelines, this case is over. The presentence report correctly calculates Tisdale's criminal history category at level V,[7] *requiring* the district court to move from level 33, category IV, to level 33, category V, which is a range of 210–262 months. The district court may sentence anywhere within a permissible guideline range without any departure explanation, since there is no departure. That is exactly what occurred here. The district court looked at the *first appropriate range* and sentenced within it, at 262 months. The "departure" is effectively from

the mandatory minimum to the appropriate guideline range for armed career criminals. After that, the district court sentenced within the guidelines.

### 2.

In selecting a sentence more than six years above the statutory minimum, the district court emphasized Tisdale's criminal record and need for incapacitation, stating:

[I]n all [the] time since the guidelines came into effect I have departed upward rarely. And the fact that it's done in this case indicates my view of the gravity of this case, of the nature of the life of Mr. Tisdale, and the necessity for the protection of society that he be imprisoned as an end in itself so that he's not about on the streets committing more offenses.

R. Vol. III at 33.

The presentence report bears out the district court's concern. In addition to the three convictions used in calculating Tisdale's criminal history category, the report shows a history of very serious criminal conduct, including weapons and drugs, much of which conduct was charged but dismissed because of guilty pleas or convictions on other charges. This history spans Tisdale's adult life, during times he was not in prison. While the district court also noted various circumstances in connection with Tisdale's arrest in the case before us—three loaded weapons and the presence of drugs and drug paraphernalia at the site—Tisdale's criminal history and continuing danger to society alone easily justify the court's sentence.

A number of cases have upheld as reasonable for ACCA violations sentences comparable to and even in excess of the 262–month sentence imposed here. *See, e.g., United States v. Doucette,* 979 F.2d 1042, 1048 (5th Cir.1992) (departure upward to 25 years reasonable); *United States v. Carpenter,* 963 F.2d 736, 745 (5th Cir.) (departure upward to

---

**6.** This is substantially the explanation given by the Sentencing Commission in the process of rectifying the omission of the armed career criminal category in the guidelines. *See* 55 Fed.Reg. 5732–33 (1990). In proposing what became § 4B1.4, the Commission stated: "Just as there is a guideline range for career offenders, this amendment would create a guideline permitting

a range of sentences above the statutory minimum for defendants sentenced under 18 U.S.C. § 924(e)." 55 Fed.Reg. 5732 (1990).

**7.** The propriety of criminal history category V as a starting point for sentencing Tisdale is undisputed. R. Vol. III at 32.

230 months reasonable), *cert. denied,* —— U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992); *United States v. Briggman,* 931 F.2d 705, 710 (11th Cir.) (30–year sentence reasonable), *cert. denied,* —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991); *Simmons,* 924 F.2d at 192 (departure upward to 50 years reasonable); *United States v. Fields,* 923 F.2d 358, 362 (5th Cir.) (departure upward to 204 months reasonable), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Lebon,* 800 F.Supp. 1012, 1018 (D.Mass.1992) (departure upward to 240 months reasonable).

3.

In *Williams,* the Supreme Court emphasized the fact that the appellate review of sentences permitted by the Sentencing Reform Act is limited and does not "alter a court of appeals' traditional deference to a district court's exercise of its sentencing discretion." *Williams,* —— U.S. at ——, 112 S.Ct. at 1121. The Court went on to say:

The development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."

(quoting *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3010 n. 16, 77 L.Ed.2d 637 (1983)).

■ There is no justification in this case for us to interfere with the district court's sentencing discretion. In the exercise of our appellate review under 18 U.S.C. § 3742(f)(2), we hold that the sentence imposed by the district court is not unreasonable.[8]

**II.**

■ The *Ex Post Facto* Clause of the Constitution prohibits the enactment of a law which " '*must* apply to events occurring before its enactment.' " *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (emphasis added)). This court has also held that the Clause "prohibits retroactive *application* of a changed guideline if the change disadvantages the defendant." *United States v. Underwood,* 938 F.2d 1086, 1090 (10th Cir.1991) (emphasis added); *Smith,* 930 F.2d at 1452 n. 3.

■ We disagree with Tisdale's argument that the Clause was violated when the district court sought guidance from the subsequently promulgated amendment to the guideline, § 4B1.4. We first examine whether or not the district court felt that it was governed by § 4B1.4, and compelled to apply that guideline. After that, we address whether a district court is prohibited from taking notice of subsequently enacted amendments to the guidelines for purposes of deriving guidance and information which may be used by way of applying analogy.

A.

The record of the sentencing proceeding in this case shows clearly that the district court did not sentence Tisdale under § 4B1.4, and did not consider itself governed by that guideline. To the contrary, the parties and the court focused on the inapplicability of § 4B1.4, and *ex post facto* consequences which would result from an application of that guideline.

The presentence report upon which the court relied stated expressly that sentencing was not controlled by § 4B1.4, since that guideline provision was promulgated subsequent to Tisdale's offense of conviction. R. Vol. III at 6, 31. The parties addressed it as well as *ex post facto* prohibitions at length.

---

**8.** Even if, arguendo, the district court was not perfect in its reasoning or explanation at various points, our responsibility is still clear. In *United States v. O'Dell,* 965 F.2d 937 (10th Cir.1992), we observed that:

As we understand our appellate responsibility as set out in *Williams,* we should not remand if we are satisfied, as we are, that the district court would impose the same, reasonable sentence if we required it to articulate with the detail specified in *Jackson* and its progeny.

*Id.* at 939. We are satisfied that the district court judge would impose the same, reasonable sentence on remand, even if an argument could be made for a remand.

*Id.* at 6, 15–26. The court recognized and returned repeatedly to those points, leaving no doubt that the court knew Tisdale's sentence was not governed by and could not be imposed under § 4B1.4. *Id.* at 6–7, 17, 22, 28–29, 31. Consistent with that understanding the court articulated reasons for *departing upward* in sentencing Tisdale which, of course, would have been an unnecessary exercise, and the wrong terminology, if the court thought it was simply applying the guideline in question. *Id.* at 27–28.

In this context—being fully informed and aware—the district court looked at the sentencing range established by the Sentencing Commission under § 4B1.4, for the sole purpose of testing by analogy the reasonableness of the degree of the court's departure upward. The following excerpts from the sentencing proceeding illustrate the point:

> [MRS. JOPLIN:] And I think the harder, the harder problem for the Court here is not justifying that, those reasons, but is pinning the degree of departure to the guidelines.
>
> THE COURT: Well, yes.
>
> MRS. JOPLIN: And I don't know how to do it without reference to the amended guidelines.
>
> THE COURT: Yes. And I think we'd all concede, and I haven't the slightest reluctance to concede, the error of my ways in the original sentence by simply regarding this as twice as grave as the simplest case that could be imagined that would elevate this to the 15–year level. But at that time we didn't have the benefit of the subsequent Tenth Circuit decisions that required some reference to some *external benchmark.* So I have no quarrel with those subsequent decisions, but they just weren't available for our guidance at the time.
>
> You know, it's difficult for Miss Otto to argue a fallback position that even if she's wrong on the question of departure per se that there's some other benchmark, I think that might tend to undermine her argument on the departure per se. But if this is not a logical *benchmark* in that it has

already been determined by the people responsible for such things as being reasonable, and the third of the Tenth Circuit inquiries, is the degree reasonable, what else is there, if not this? The amended guidelines.

> MRS. JOPLIN: And I don't know the answer to that. I just feel comfortable that it does not run afoul of the ex post facto clause. But if we don't look to that, then I don't know what in the guidelines we do look to. *I do think the Court must take care to make clear that the Court is seeking guidance in part from the amended guideline and not, of course, applying it.*
>
> . . . .
>
> [THE COURT:] So that leads us, then, to the third question that the Tenth Circuit wants answered. *Is the particular departure reasonable?* And the way they ordinarily expect us to do that is to extrapolate from the matrix. Here go up a couple, or move to the right a little bit; or maybe even with respect to a criminal category move off the table to the right and create a new column, a notional column. Well, that process is not an end in itself, that is a way of making the reasonableness determination that's satisfactory to the Circuit. I don't think they've ever said that's the only way. And here the people who decide, for better, for worse, *what's reasonable,* have decided it. *So we do have a benchmark.*
>
> . . . .
>
> [THE COURT:] My remarks about *disablement* as being the sentencing objective that applies in this case is intended to satisfy the requirement that a finding be entered as to why I picked a specific point on the range. And *in the guideline that I'm using as an analog,* I believe the range is 210 to 262.

*Id.* at 22–23, 28–29, 31 (emphasis added).

As these excerpts show, the district court almost exhausted the possibilities of the English language in declaring its state of mind: "*external* benchmark," "benchmark," "reasonableness determination," "analog."[9]

---

9. The ordinary meaning of analog/analogue is resembling or having a similarity—being analo-

gous—to something else. *See Webster's Ninth New Collegiate Dictionary* 82 (1985).

Considering the presentence report and the dialogue at the sentencing hearing, the only thing the court could have done to make its mental process more clear would have been the addition of: "and I really mean it," after each of these expressions. This is a state of mind inquiry, and the argument ends when the district judge declares his or her mind. *Cf. Andrews v. Deland,* 943 F.2d 1162, 1171 (10th Cir.1991) ("We will not look behind a district court's express statement that it engaged in a *de novo* review of the record."), *cert. denied,* —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992).

In sum, the district court did not regard § 4B1.4 as a law which it *must* apply, and it did not apply it. Rather, the court looked to § 4B1.4 as an external benchmark against which the court could evaluate the reasonableness of its degree of a departure, and the departure itself.

B.

We remanded this case to the district court to resentence, stating reasons, in effect, why its resentence is so consistent with the policy and structure of the guidelines that—ideally—it is exactly in the range the Commission would have prescribed if it had considered the matter. In the meantime, the Commission fortuitously did consider the matter and promulgated § 4B1.4. So, at the resentencing the district court quite logically stated:

> But if this is not a logical benchmark in that it has already been determined by the people responsible for such things as being reasonable, and the third of the Tenth Circuit inquiries, is the degree reasonable, what else is there, if not this? The amended guidelines.

R. Vol. III at 23.

The district court was entirely correct. The Commission acknowledged by its action and in commentary under § 4B1.4 that the guidelines had previously failed to implement 18 U.S.C. § 924(e) by recognizing a separate category for armed career criminals. At the same time it established the range at the place dictated by methodology previously employed by the Commission under § 2D1.1, i.e., a guideline range as close to the statutory minimum as possible even if the lower part of that range is *above* the statutory minimum. *See* U.S.S.G. § 2D1.1, comment. (backg'd.). Thus, the Commission specified the *minimum* base offense level of 33, and criminal offense level of IV,[10] resulting in a beginning guideline range of 188–235 months. The lower level of that range is as close as the guideline ranges get to the statutory mandatory *minimum* of 180 months in criminal history category IV.

It simply cannot be that the *Ex Post Facto* Clause is violated when a district court points to the Commission's acknowledgment of an omitted category. The acknowledgment only buttresses what was plain to any observer at the outset. The same is true of the range established by the Commission for that category. The question is whether the district court is merely informed or whether it deems itself compelled to apply an amendment which precedes the new sentence.

When a district court says it is drawing an analogy to the amendment, or profiting by the Commission's evident reasoning process, it is only being informed. It is not unconstitutional to be more knowledgeable in that fashion. As the district court aptly put it, how is it supposed to improve on the reasoning process and conclusion of the Commission?

 Courts are not bound to close their eyes to reasonableness determinations made by other bodies, whether courts, the Commission, or otherwise, when those determinations are available for consideration at the time of discretionary sentencing. So long as the court makes clear its understanding that a subsequently enacted guideline does not *govern,* it is *per se* reasonable for the court to consider it. *See United States v. Willey,* 985 F.2d 1342, 1350 (7th Cir.1993) (no *ex post facto* violation where court "applied the 1989 guidelines and, based on sound reasons for departure, used the 1990 amendment as its

---

**10.** 18 U.S.C. § 924(e) requires three previous convictions for a violent felony or drug offense, which, at three criminal history points each un-

der § 4A1.1(a); equals nine points, or category IV.

model for sentencing upward."); *United States v. Harotunian*, 920 F.2d 1040, 1046 (1st Cir.1990) (no *ex post facto* violation where "there is nothing in the court's sentencing statement to make us think that it treated the amended guidelines as controlling."); *Lebon*, 800 F.Supp. at 1018 ("The amended guideline, by analogy, substantiates the reasonableness of the 240–month sentence imposed here.").

## CONCLUSION

For the reasons stated above, the sentence imposed by the district court is **AFFIRMED.**