**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Johnny Arnold HALLIBURTON (95–5648)**
**and Nancy Jane Welborn (95–5649),**
**Defendants–Appellants.**

**Nos. 95–5648, 95–5649.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 15, 1995.

Decided Jan. 17, 1996.

Terry Cushing (briefed) and Alexander T. Taft, Jr. (argued), Asst. U.S. Attys., Louisville, KY, for Plaintiff–Appellee.

* The Honorable Monroe G. McKay, United States Circuit Judge for the Tenth Circuit, sitting by

Mark D. Alcott (argued and briefed) Harlin & Parker, Bowling Green, KY, and William P. Skaggs (argued and briefed), Bowling Green, KY, for Defendants–Appellants.

Before: NELSON, RYAN, and McKAY,* Circuit Judges.

NELSON, J., delivered the opinion of the court, in which McKAY, J., joined. RYAN, J. (pp. 114–117), delivered a separate dissenting opinion.

DAVID A. NELSON, Circuit Judge.

On November 30, 1993, Congress adopted legislation making it a federal crime to steal a firearm from a licensed firearms dealer. See 18 U.S.C. § 922(u), enacted by Pub.L. No. 103–159, § 302(c). About a year after the law was passed the defendants pleaded guilty to having committed such a crime. They were sentenced in April of 1995 under the most recent edition of the United States Sentencing Commission's *Guidelines Manual*, an edition issued on November 1, 1994.

The Sentencing Commission had not cited the new statute in either the Statutory Index set forth as Appendix A of the manual or in any of the lists of statutory provisions set forth under individual offense guidelines in Chapter Two of the manual. Noting the omission of any such citation, and after searching Chapter Two for the "most analogous" guideline, the district court decided to apply U.S.S.G. § 2K2.1—the guideline that covers, among other things, "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition." Sentences of imprisonment were imposed on that basis.

The defendants contend here, as they did before the district court, that the applicable guideline is not 2K2.1 but 2B1.1. The latter guideline specifically addresses, among other things, "Larceny ... and Other Forms of Theft," and it specifically mandates an offense level increase for taking a firearm.

We agree with the defendants that the guideline currently applicable to the offense designation.

of which they were convicted is 2B1.1.[1] We shall therefore vacate the sentences and remand the cases for resentencing.

I

The statute under which defendants were convicted, 18 U.S.C. § 922(u), proscribes the theft from a licensed firearm dealer of a firearm that has been shipped in commerce:

"It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce."

In November of 1994 the defendants, Johnny Arnold Halliburton and Nancy Jane Welborn, were indicted under this statute with a third person, Nathan D. Farmer. The indictment charged that Mr. Farmer, aided and abetted by Mr. Halliburton and Ms. Welborn, stole seven handguns from the premises of Homestead Hardware, a store that held a firearms dealer's license issued by the Bureau of Alcohol, Tobacco and Firearms.

Mr. Halliburton and Ms. Welborn subsequently pleaded guilty to the single count of the indictment. The pleas were entered pursuant to unwritten plea agreements in which the government stipulated that it would not oppose sentences at the lowest end of the appropriate guideline range. It was agreed that the range would be calculated on the basis of a reduction in the offense level by reason of the defendants' acceptance of responsibility. See U.S.S.G. § 3E1.1. The plea agreements did not, however, address the issue of which Chapter Two guideline would be used.

A probation officer prepared presentence investigation reports that recommended using U.S.S.G. § 2K2.1. Under this recommendation, the defendants' final adjusted offense level would be 12. The defendants objected that the probation officer should have used U.S.S.G. § 2B1.1. Under that guideline, the final offense level (adjusted downward to reflect acceptance of responsibility and adjusted upward to reflect the magnitude of the loss and the fact that a firearm was taken) would be 6.

The district court ruled at the time of sentencing that "guideline 2K2.1 is the most analogous guideline in this situation." In calculating the defendants' guideline sentence range, therefore, the court used an adjusted offense level of 12. Mr. Halliburton was placed in Criminal History Category III, while Ms. Welborn was placed in Criminal History Category I. Under the manual's sentencing table these coordinates produced guideline ranges of imprisonment for 15–21 months in Mr. Halliburton's case and 10–16 months in Ms. Welborn's case. The ranges would have been 2–8 months for Mr. Halliburton and 0–6 months for Ms. Welborn if the lower offense levels had been used.

The court sentenced Mr. Halliburton to imprisonment for 15 months, to be followed by a three-year term of supervised release. Ms. Welborn was sentenced to imprisonment for five months, to be followed by a term of supervised release of which the first five months would be in home detention. The defendants perfected timely appeals of their sentences.

II

The first of the application instructions in the manual, § 1B1.1(a), directs the sentencing court to "[d]etermine the applicable offense guideline section from Chapter Two." The instruction goes on to note that "[t]he Statutory Index (Appendix A) provides a listing to assist in this determination."

■ The index in Appendix A lists several hundred statutory offenses and provides a

---

1. This opinion was prepared and circulated to the panel prior to November 1, 1995. In May of 1995, as noted *infra,* the Sentencing Commission proposed an amendment to the *Guidelines Manual* which, under circumstances such as those presented here, would make U.S.S.G. § 2K2.1 applicable to the offense of which the defendants were convicted. See 60 Fed.Reg. 25074, 25075, 25089 (May 10, 1995). The amendment became effective on November 1, 1995. What effect the amendment may have on the case at bar is an issue on which the panel is divided, for reasons explained herein and in the dissenting opinion.

reference to one or more of the offense guideline sections in Chapter Two for each of the listed crimes. As mentioned above, the index does not yet list the statutory provision with which we are concerned here, 18 U.S.C. § 922(u). But as the Court of Appeals for the Ninth Circuit observed in *United States v. Cambra*, 933 F.2d 752, 755 (9th Cir.1991), the Statutory Index in Appendix A is only "an interpretive aid."

"Rather than establishing immutably the exclusive list of available guidelines for given offenses, the Index merely points the court in the right direction. Its suggestions are advisory; *what ultimately controls is the 'most applicable guideline.'*" *Id.* (Emphasis supplied).

"For those offenses not listed in this index," the introduction to Appendix A says, "the most analogous guideline is to be applied." The reader is referred in this connection to U.S.S.G. § 2X5.1, a catch-all offense guideline at the end of Chapter Two.

Section 2X5.1, a guideline for offenses as to which no other guideline has been expressly promulgated, directs the court to apply "the most analogous offense guideline," assuming that "a sufficiently analogous guideline" exists. There is no need to resort to § 2X5.1 (or to the Statutory Index, for that matter) where the court is satisfied that one of the other guidelines in Chapter Two expressly applies to the offense of which a particular defendant has been convicted.

And applicability admits of degree, in the world created by the Sentencing Commission. U.S.S.G. § 1B1.2—a section to which a cross-reference is provided in § 1B1.1(a)— directs the court to determine the offense guideline section in Chapter Two that is "most applicable" to the offense of which the defendant was convicted. Application Note 1

in the Commentary accompanying § 1B1.2 reiterates that as a general rule, at least, "the court is to use the guideline section from Chapter Two *most applicable* to the offense of conviction." (Emphasis supplied.)

■ U.S.S.G. § 2K2.1, the offense guideline section used by the district court in the case at bar, is not directly applicable to the offense of which Mr. Halliburton and Ms. Welborn were convicted. Section 2K2.1 deals with the "Unlawful Receipt, Possession, or Transportation of Firearms," and with certain "Prohibited Transactions Involving Firearms." The statutory provisions cited in the Commentary to § 2K2.1 indicate that the "Prohibited Transactions" in question involve such crimes as engaging in a firearms business without having paid the special occupation tax prescribed by 26 U.S.C. § 5801. See 26 U.S.C. 5861(a). A crime of theft is simply not among the crimes to which U.S.S.G. § 2K2.1, by its terms, applies.

Section 2B1.1, on the other hand, specifically applies to larceny and other forms of theft. Establishing a base offense level that is to be increased in accordance with the dollar amount of the loss, this guideline goes on to mandate a further increase in the offense level if "a *firearm*, destructive device, or controlled substance was taken." (Emphasis supplied.) In our view, therefore, 2B1.1 is the guideline "most applicable" here.

Like 2K2.1, 2B1.1 expressly addresses crimes involving firearms. Unlike 2K2.1, however, 2B1.1 also addresses, expressly, the type of crime committed by the defendants here—the crime of theft.[2] This circumstance, in our view, makes 2B1.1 more clearly applicable here than 2K2.1.

---

**2.** Section 2B1.1 does not refer to interstate commerce or theft from a federally licensed dealer, to be sure, but "a guideline need not address every aspect of charged conduct." *United States v. Lambert*, 994 F.2d 1088, 1092 n.3 (4th Cir. 1993). Section 2K2.1 does not address these aspects either, of course.

What § 2B1.1 does address, clearly and explicitly, is the stealing of firearms. That made the guidelines "applicable" in a way that § 2K2.1 is not. The present case differs in this respect from *United States v. Smertneck*, 954 F.2d 264 (5th

Cir.1992), *cert. denied*, 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992), a case cited in the dissent. In *Smertneck* there was no guideline section that could properly be said to be "applicable." Here there is.

The dissent suggests that the distinction between guideline sections that are directly applicable and guideline sections that are merely analogous is "abstract." We agree. The Sentencing Commission having drawn the distinction, however, we must do our best to make sense of it.

The crime committed by Mr. Halliburton and Ms. Welborn is closely analogous to some of the crimes to which § 2B1.1 unquestionably applies. Among the statutory provisions listed in the Commentary to § 2B1.1, for example, is 18 U.S.C. § 641. That statute makes it a federal offense to steal property from the United States. If the defendants in this case had stolen seven handguns from the Bureau of Alcohol, Tobacco and Firearms and had been prosecuted and convicted under 18 U.S.C. § 641, it is clear that their offense levels would have been governed by U.S.S.G. § 2B1.1. It makes little sense to us that a harsher guideline, 2K2.1, should be applied where the handguns were stolen from a hardware store that was not an instrumentality of the United States, but was merely licensed by ATF. And, again, the defendants admittedly having committed a theft, it makes little sense to apply a guideline that does not deal with theft in preference to a guideline that does deal with theft.

The government argues that Congress was concerned with the integrity of the federal firearm licensing system, rather than with theft generally, when it passed 18 U.S.C. § 922(u). And the government notes that the next edition of the *Guidelines Manual,* scheduled to take effect on November 1, 1995, will apply § 2K2.1 to the theft of a firearm if the resulting offense level would be higher than that under § 2B1.1. See 60 Fed.Reg. 25074, 25075, 25089 (May 10, 1995). It is not suggested that this is the type of "clarifying" amendment that can appropriately be given retroactive effect; the suggestion, rather, is that the amendment provides anecdotal support for the proposition that guideline 2K2.1 was the appropriate guideline to apply here.

We think that the amendment provides at least as much support for the proposition that the offense guideline currently applicable to the theft of firearms is 2B1.1. The commentary to the proposed amendment notes that "[t]his amendment addresses an inconsistency in guideline penalties between theft offenses involving the taking of firearms ... that are sentenced under § 2B1.1," on the one hand, and offenses sentenced under § 2K2.1, *inter al.,* on the other hand.

60 Fed.Reg. at 25075. The amendment appears to be designed to make a substantive change in the current guidelines.

As to the argument that 18 U.S.C. § 922(u) was not so much concerned with theft, *per se,* as with protection of the system under which the firearms trade is regulated, we would simply point out that there cannot be a violation of § 922(u) unless a person "steal[s] or unlawfully take[s] or carr[ies] away" a firearm. The indictment charged that the defendants "did steal, unlawfully take, and carry away from the premises of Homestead Hardware seven firearms." The operative verbs of this charge correspond directly to the type of offense conduct covered by guideline 2B1.1. The offense level enhancement mandated by 2B1.1(b)(2) applies where "a firearm ... was taken." Firearms were taken by the defendants here, which is why the defendants were convicted; they were not convicted for unlawfully receiving or possessing or transporting firearms, which would have been the type of offense conduct covered by guideline 2K2.1.

The sentences are **VACATED**, and the cases are **REMANDED** for resentencing in a manner not inconsistent with this opinion.

RYAN, Circuit Judge, dissenting.

Because I conclude that the district court did not err in the sentences it imposed on the defendants, I write separately to explain my view.

When "no specific federal sentencing guideline applie[s]" to a particular statute, a court is directed by the *Guidelines Manual* to apply the "most analogous guideline." *United States v. Gray,* 982 F.2d 1020, 1021 (6th Cir.1993); *United States v. Holmes,* 975 F.2d 275, 278–79 (6th Cir.1992), *cert. denied,* 507 U.S. 934, 113 S.Ct. 1322, 122 L.Ed.2d 708 (1993). Because the majority concludes that U.S.S.G. § 2B1.1 "applies" directly to the crime at issue here, it reasons that the question is not which guideline is most "analogous," under U.S.S.G. § 2X5.1, but rather which is most "applicable," under U.S.S.G. § 1B1.2(a). While confessing that I find any difference between searching for the guideline that is most "applicable" and that which is most "analogous" to be abstruse, at best, I

have nonetheless concluded that because here, neither section 2B1.1 nor U.S.S.G. § 2K2.1 provides language precisely describing 18 U.S.C. § 922(u) in all its particulars, the court's obligation is to find which of these two is most analogous. *See United States v. Smertneck,* 954 F.2d 264, 265 (5th Cir.), *cert. denied,* 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992).

In *Smertneck,* the defendant was charged with a violation of 21 U.S.C. § 843(a)(6), which provides that it is unlawful "to possess any three-neck round-bottom flask ... specially designed or modified to manufacture a controlled substance." *Id.* at 264. The defendant admitted to transporting such flasks to his home, where he operated a methamphetamine laboratory. Since no guideline specifically pertained to this statute, the parties argued over which guideline governed. In an approach I believe is instructive, the court, rather than looking directly to the *guidelines,* considered which *statute* was most like the crime committed by the defendant:

> The primary thrust of appellant's argument is that guidelines for a violation of 21 U.S.C. § 863 are the most analogous offense guidelines.... [Section] 863 deals with use, sale or trafficking of drug paraphernalia.... Dissimilarly, 21 U.S.C. § 841(d) is directed to the possession of a chemical with intent to manufacture a controlled substance. The former statute makes illegal the use, sale or trafficking of things used to consume or experience controlled substances. The latter statute makes illegal the possession of things used to create controlled substances. The thing possessed by Mr. Smertneck was a three-neck flask, which Mr. Smertneck admitted he possessed with the intent to manufacture a controlled substance, not to experience a controlled substance.

*Id.* The *Smertneck* court accordingly affirmed the district court's use of the guideline prescribed by Appendix A to apply to 21 U.S.C. § 841(d).

At issue here is 18 U.S.C. § 922(u), which was enacted as part of the Brady Handgun Violence Prevention Act, Pub.L. No. 103–159, 107 Stat. 1536 (1993). As is well-known, the purpose of the Brady Act, as a general matter, was to address the proliferation of firearms; since many firearms involved in crimes are stolen firearms, one provision of the Brady Act was to punish the theft of firearms from federally licensed dealers. *See* H.R. REP. No. 344, 103d Cong., 1st Sess. 11 (1993), U.S. Code Cong. & Admin. News 1993, p. 1984; *see also* 140 CONG. REC. S9503 (daily ed. July 22, 1994) (statement of Sen. Kerrey); 137 CONG. REC. S8934 (daily ed. June 27, 1991) (statement of Sen. Stevens); 137 CONG. REC. H2851 (daily ed. May 8, 1991) (statement of Rep. Stokes). To that end, section 922(u) provides as follows:

> It shall be unlawful for a person to steal or unlawfully take or carry away from the person or the premises of a person who is licensed to engage in the business of importing, manufacturing, or dealing in firearms, any firearm in the licensee's business inventory that has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(u). Section 922(u), then, does not punish any type of theft conduct except for that which has as its purpose the obtaining of firearms from licensed dealers. It does not criminalize the taking of a firearm, for example, from a private residence, where the taking of the firearm is an adjunct to, say, the taking of the silverware. Employing the *Smertneck* court's approach, one readily observes that the gravamen of section 922(u) is the involvement of a *firearm,* not the fact of the theft; the statute's focus is not on the theft conduct itself, but only on that conduct insofar as it pertains to firearms.

This focus section 922(u) shares with all the other section 922 crimes. Appendix A to the guidelines explicitly provides that violations of all subsections of section 922 which preexisted the Brady Act are to be punished under section 2K2.1; while not, by its terms, directly addressing thefts, section 2K2.1 addresses the primary objective of the type of theft criminalized in section 922(u), that is, stealing *firearms.* In light of the identity in purpose between section 922(u) and the other subsections of section 922, it seems to me to be an obvious conclusion that the guideline pertaining to those other subsections—sec-

tion 2K2.1—is the guideline most analogous to section 922(u).

The majority would not employ the *Smertneck* approach, and would not select the most analogous, or most applicable, guideline by selecting the guideline associated with the statute most analogous to the statute charged. It would, instead, compare the charged conduct to the language of the guidelines, and determine which guideline most resembles the charged conduct. In that regard, the majority emphasizes the indictment language, to the effect that the defendants "did steal, unlawfully take, and carry away from the premises of Homestead Hardware seven firearms." The problem with that approach is found when, as in this case, neither guideline suggested by the parties bears a perfect resemblance to the charged conduct. The majority opinion selects section 2B1.1, because, it explains, what is important are the verbs in the indictment language, that is, the stealing, taking, and carrying away, and section 2K2.1 does not explicitly address those verbs. There is no suggestion by the majority, however, that the breadth of section 2K2.1 excludes its application to theft conduct.

I find the majority's approach unsatisfactory, since here, the undisputed legislative purpose of section 922(u)—the punishment of firearms offenses—makes plain that the nouns, rather than the verbs, are quite important. Although section 2B1.1 allows for a one-level enhancement when a firearm is stolen, it plainly does not contemplate a crime of which the central distinguishing factor is the involvement of firearms. Section 2K2.1, on the other hand, does contemplate such a crime. As already discussed, in my view, the legislative history makes plain that firearms, not thefts, are the essence of section 922(u).

Further support for selecting section 2K2.1 rather than the lesser penalty imposed by section 2B1.1 is found in a consideration of the statutory penalty specified by Congress for violations of section 922(u). The penalty provision for section 922(u), found at 18 U.S.C. § 924(i)(1), reads as follows: "A person who knowingly violates section 922(u) shall be fined under this title, imprisoned not more than 10 years, or both." This is an enhanced penalty provision, allowing for greater penalties than those normally available for violations of section 922. *United States v. Langley*, 62 F.3d 602, 610 n.7 (4th Cir.1995) (*en banc*) (Phillips, J., concurring), *cert. denied,* —— U.S. ——, 116 S.Ct. 797, 133 L.Ed.2d 745 (1996). The fact that section 924(i)(1) prescribes an enhanced penalty for violation of section 922(u), compared to certain other section 922 infractions, clearly indicates that Congress viewed this crime as potentially more serious than the other section 922 offenses, not less so. Application, therefore, of section 2B1.1, which would result in a lower sentence than section 2K2.1 would prescribe for other section 922 offenses, contradicts this clear congressional message, and again counsels against the wisdom of selecting section 2B1.1.

Finally, unlike the majority, I believe that the recent actions of the United States Sentencing Commission also counsel in favor of applying section 2K2.1 to the crimes at issue here. As the majority notes, generally, a guidelines clause which increases a penalty and which is enacted subsequent to the offense conduct cannot govern a defendant's sentence without violating the *Ex Post Facto* Clause. *See United States v. Tisdale*, 7 F.3d 957, 965 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1201, 127 L.Ed.2d 549 (1994); *Holmes,* 975 F.2d at 278. Nonetheless, it is appropriate for a court to take subsequent action by the Sentencing Commission into account, "[s]o long as the court makes clear its understanding that a subsequently enacted guideline does not *govern,*" but is only used for guidance and information of what sentence the guidelines prescribed at the time of the offense conduct. *Tisdale,* 7 F.3d at 967.

The Sentencing Commission is empowered by statute to create new sentencing guidelines and modify existing guidelines on an annual basis. 28 U.S.C. § 994(p). On January 9, 1995, the Sentencing Commission issued a notice of a proposed amendment to the sentencing guidelines, dealing, in part, with the appropriate guideline for 18 U.S.C. § 922(u). The notice first notes that "[c]urrent law ... proscribes ... stealing from the

person or premises of a licensee any firearm in the business inventory." 60 Fed.Reg. 2430, 2439 (1995) (citing 18 U.S.C. § 922(u)). It further notes that "18 U.S.C. § 922(u) (theft from dealer) as well as 18 U.S.C. §§ 922(s) and 922(t) (Brady bill provisions) are not listed in the Statutory Index" to the guidelines. *Id.* The notice then discusses the two possible applicable guideline provisions under discussion in this case, and draws attention to the obvious disparity:

> Guideline 2K2.1 covers offenses involving stolen firearms. These offenses are subject to a base offense level of 12....
>
> Guideline 2B1.1 governs general theft offenses, including offenses of goods traveling in interstate commerce and offenses within the special federal maritime or territorial jurisdiction or within Indian territory. Guideline 2B1.1(b)(2)(A) provides for a one-level increase ... if a firearm or destructive device was taken, compared with a base offense level 12 under § 2K2.1.

*Id.* at 2439–40. It proposes the following solution:

> Two options are proposed to address the disparity in § 2B1.1 and § 2K2.1 penalties. Option 1 amends § 2B1.1 to include a cross reference to § 2K2.1. Option 2 amends § 2B1.1 to recommend an upward departure.

*Id.* at 2440. The notice then gives detailed instructions for the appropriate amendments, all of which boil down to making 12 the base offense level for a conviction under 18 U.S.C. § 922(u). *Id.* On May 10, 1995, the Commission submitted its amendments to Congress, adding section 922(u) to the statutory provisions covered by section 2K2.1. 60 Fed.Reg. 25074, 25075, 25084 & 25089 (1995).

The majority opinion rejects the recent guidance provided by actions of the Sentencing Commission, out of the belief that the recent amendments "appear[ ] to be designed to make a substantive change." I find no support for such a suggestion in the text. Instead, I read the amendments as a simple clarification that a base offense level of 12, not 4, is the appropriate punishment for a violation of section 922(u). As already discussed, Congress, in enacting the statute, made clear that the punishment was to be at least as severe as other section 922 offenses, if not more so. There is nowhere an indication that the more lenient penalty was ever contemplated or intended.

In sum, it is my view that punishing section 922(u) offenses as theft offenses far undervalues the seriousness of the crime, as it was conceived by Congress, and drastically mistakes the congressional purpose in criminalizing the conduct. I would affirm the district court's sentence, and must therefore respectfully dissent.