**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Errol William SLOLEY, Defendant–
Appellant.**

No. 92–5840.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1994.

Decided March 21, 1994.

**ARGUED:** Lawrence Jay Fine, Winston–Salem, NC, for appellant. Robert Michael Hamilton, Asst. U.S. Atty., Greensboro, NC, for appellee.

**ON BRIEF:** Benjamin H. White, Jr., U.S. Atty., Greensboro, NC, for appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

A state trooper attempted a roadside arrest of defendant-appellant Errol William Sloley for possession of more than 160 pounds of marijuana. Sloley resisted arrest, seized the trooper's gun, and escaped. He was later indicted and convicted for drug possession and drug conspiracy, as well as for using or carrying a firearm during and in relation to a drug trafficking crime. He was sentenced to 125 months imprisonment, and has now appealed both his conviction on the firearm count and his sentence. We affirm.

### I.

On May 12, 1992, North Carolina State Trooper Tim Cardwell was patrolling Inter-

state 85 near Archdale, North Carolina, in his marked cruiser, when two cars passed him at high speed: a Volkswagen driven by Jason Shiver, also known as Dani Gonzalez, with defendant-appellant Sloley in the passenger seat; and a Chevrolet, driven by Althea McGibbony. The trooper stopped both vehicles. McGibbony told him that she was travelling with Sloley and Shiver. The trooper questioned all three individuals and issued traffic citations to the drivers. Cardwell requested and obtained consent to search the cars and, with the assistance of his police dog, Lobo, discovered large quantities of marijuana in the Chevrolet's trunk.

Cardwell advised all three suspects that they were under arrest for possession of a controlled substance. He ordered the two male suspects to lie on the ground. Sloley began to comply but got back up on his knees when Cardwell approached to handcuff him. He again told Sloley that he was under arrest and to stay down. A struggle ensued. Sloley pulled away and attempted to get back on his feet. Shiver started to get up, too. The trooper stepped back and again ordered both suspects to the ground. Sloley hesitated and then went back down to his knees, only to resume struggling when the trooper tried to handcuff him. Sloley continued to pull away and began hitting the trooper's arm. The trooper swung his hand, which held a set of handcuffs, and grazed the side of Sloley's head. Sloley ducked, pinned the trooper's arm, and pulled the trooper's gun from its holster. The trooper initially tried to grab the gun but quickly realized it was futile. Lobo entered the fray and bit Sloley on the arm. Cardwell pushed Sloley away and began to take cover. He headed up an embankment and looked back to see Sloley raising the gun in his direction.

Cardwell continued to run towards some high weeds and heard someone calling his name. He saw Captain Gary Lewallen of the Davie County Sheriff's Office on the median of the highway. Cardwell yelled back, "He's got my gun." Sloley and Shiver ran to the Volkswagen and sped off with Lewallen in pursuit. Lewallen eventually apprehended Sloley in the woods, where he and Shiver had abandoned the Volkswagen and hidden, after throwing the gun in some bushes.

A federal grand jury sitting in the Middle District of North Carolina returned a three-count indictment against Sloley. Count One charged Sloley, McGibbony, and Shiver with conspiracy to possess marijuana with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846.[1] Count Two charged them with possession with intent to distribute 73.3 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Count Three—the subject of the instant appeal—charged only Sloley with using or carrying a firearm during and in relation to a drug trafficking crime (conspiracy to possess marijuana with the intent to distribute), in violation of 18 U.S.C. § 924(c)(1).

At trial, the district judge denied Sloley's motion for acquittal on the third count and rejected his request for a jury instruction on self-defense. The jury found Sloley guilty of all three counts. The judge sentenced him to the mandatory 60–month consecutive sentence on Count Three. He also enhanced Sloley's offense level for assaulting an "official victim" under § 3A1.2(b) of the federal Sentencing Guidelines, and sentenced him to 65 months on Counts One and Two.

On appeal, Sloley has not challenged his convictions for conspiracy to possess marijuana with the intent to distribute or for possession with intent to distribute marijuana. He does seek reversal of his conviction on the third count, using or carrying a firearm during and in relation to a drug trafficking crime. He has also appealed his sentence.

## II.

Sloley claims that the district court erred by denying his motion for acquittal on

---

1. The contents of the two vehicles could be unified since all three, Sloley, McGibbony, and Shiver, were traveling together. *See, e.g., United States v. Prieto–Tejas,* 779 F.2d 1098, 1103 (5th Cir.1986) (evidence that two persons agreed to travel together and were aware of the large amount of cocaine carried in the car purchased by one person and driven by the other person was sufficient to support a conviction for conspiracy to possess with intent to distribute); *United States v. Barnard,* 553 F.2d 389, 393 (5th Cir.1977) (evidence was sufficient to infer the defendant's participation in a drug conspiracy where the defendant was the driver of a car that appeared to be the "lead car" for a "load car" carrying 84 pounds of marijuana).

the firearm count because his use of Cardwell's gun was neither "during" nor "in relation to" the drug conspiracy offense for which he was indicted and convicted. In reviewing the denial of a motion for acquittal, we consider the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the Government, as we determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *See United States v. Bell*, 954 F.2d 232, 235 (4th Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 112, 126 L.Ed.2d 77 (1993).

Rule 29 of the Federal Rules of Criminal Procedure provides that a court shall grant a defendant's motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a). To sustain a conviction under 18 U.S.C. § 924(c)(1), the Government must prove beyond a reasonable doubt that the defendant "use[d] or carrie[d] a firearm" "during and in relation to" a "drug trafficking crime." 18 U.S.C. § 924(c)(1).

■ By its terms, the statute requires the prosecution to make two showings: first, the Government must prove that the defendant "use[d] or carrie[d] a firearm"; and second, it must prove that the use or carrying was "during and in relation to" a "drug trafficking crime." *Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993). Here, the jury heard ample evidence establishing the first showing. The contested issue is whether there was sufficient evidence to prove beyond a reasonable doubt that Sloley used or carried Cardwell's gun "during and in relation to" the underlying drug-trafficking conspiracy.

■ The Supreme Court recently interpreted § 924(c)(1) and concluded that the "in relation to" language requires, at a minimum, that the use or carrying of the firearm facili-

tated, furthered, or had the potential to facilitate or further the drug crime. *See Smith,* — U.S. at — – —, 113 S.Ct. at 2058–59.

The phrase "in relation to" …, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence…. [T]he "in relation to" language allays explicitly the concern that a person could be punished under § 924(c)(1) for committing a drug trafficking offense while in possession of a firearm even though the firearm's presence is coincidental or entirely unrelated to the crime…. Instead, the gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense.

*Id.* — U.S. at —, 113 S.Ct. at 2059 (citations and internal quotation marks and brackets omitted).[2]

In the instant case, the underlying drug crime was conspiracy to possess marijuana with the intent to distribute. Had Sloley acceded to Cardwell's efforts to arrest him, he would have immediately lost possession of his 160 pounds of marijuana and his conspiracy with Shiver and McGibbony would have come to a swift close. For Sloley, grabbing the revolver and thereby preventing an immediate arrest may have represented his only hope of keeping his drug business alive. Thus, Sloley's use of the gun was anything but coincidental; rather, it was essential to the furtherance of his drug trafficking crime.[3]

We have interpreted the "in relation to" language in a 1988 drug trafficking case, *United States v. Brockington*, 849 F.2d 872, 875–76 (4th Cir.1988). At trial, Brockington's lawyer had requested a jury instruction stating, in part: " 'That requirement [that the defendant carried the firearm "during and in relation to" the drug trafficking crime]

---

2. The drug trafficking crime need not have been the defendant's *sole* purpose in the use or carrying of the weapon. *United States v. Brown*, 915 F.2d 219, 226 (6th Cir.1990); *United States v. Payero*, 888 F.2d 928, 929 (1st Cir.1989).

3. Similarly, Sloley cannot credibly deny that he used and carried Cardwell's revolver *"during"* his drug trafficking crime, as it was the very

seizure of the gun that allowed Sloley to continue engaging in the drug conspiracy, albeit only for a brief time until he was apprehended. *Cf. United States v. McCaskill*, 676 F.2d 995, 1000 (4th Cir.) ("The escape phase of a crime is not an event occurring 'after the robbery.' It is part of the robbery."), *cert. denied*, 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed.2d 513 (1982).

is not met in a situation where the presence of the firearm played no part in the crime.'" *Id.* at 876 (quoting defense counsel's proposed instruction). The district judge had rejected defense counsel's proposal and instead instructed the jury: "'A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself or [to] make an escape possible.'" *Id.* at 875 (quoting the jury instruction). On appeal, Brockington specifically objected to the examples in the district judge's instruction (self-protection and facilitating an escape) on the ground that they "allowed the jury to convict him on a more attenuated 'relation' than was intended by Congress under § 924(c)(1) as amended in 1984." *Id.* at 876.

The Fourth Circuit affirmed Brockington's conviction. Judge Phillips noted that the jury instruction was explicitly supported in the Senate Report describing the 1984 amendment that added the "in relation to" language to § 924(c)(1). That report specifically endorsed the conviction of a defendant where it could be inferred from circumstantial evidence that he "'intended to use the gun ... to make his escape.'" *Id.* (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 314 n. 10 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3492 n. 10). Here the evidence that Sloley intended to use the gun to make his escape was more than circumstantial: it is undisputed that Sloley actually *did* escape by using the gun.[4]

A rational trier of fact certainly could have found, beyond a reasonable doubt, that Sloley used and carried a firearm during and in relation to the drug trafficking crime, within the meaning of 18 U.S.C. § 924(c)(1). Therefore, the district court did not err in denying Sloley's Rule 29 motion for acquittal.

### III.

▮ Next Sloley has argued that, assuming the district court properly denied his motion for acquittal, he was entitled to a self-defense instruction. At trial Sloley testified that he took the gun from Cardwell because he feared for his safety during the altercation that occurred while the trooper was attempting to arrest him. The district judge allowed Sloley's lawyer to recap his client's testimony in his closing argument, but did not allow him to draw any conclusions as to self defense. Moreover, he denied Sloley's request for a self-defense instruction.

▮ Sloley's self-defense argument lacks merit. Generally, a criminal defendant is entitled to an instruction as to any defense, provided that the instruction (1) has an evidentiary foundation, *and* (2) accurately states the law. *See Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); *United States v. Ricks,* 882 F.2d 885, 893 (4th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 841 (1990). As a matter of law, "self-defense is irrelevant to a section 924(c) violation." *United States v. Poindexter,* 942 F.2d 354, 360 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991); *accord United States v. Johnson,* 977 F.2d 1360, 1378 (10th Cir.1992) ("[O]nce the association between the use of firearms and drug trafficking is shown, any additional finding that self defense motivated use of the firearms is not relevant to a conviction under § 924.") (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993); *see also United States v. Hill,* 971 F.2d 1461, 1484–85 (10th Cir.1992) (en banc) (Moore, J., dissenting) (stating that Congress in 1986 rejected an amendment to § 924(c) that would have allowed a drug-trafficking defendant to claim self defense if he had used or carried a firearm because he feared being arrested "unlawfully" by a police officer) (citation omitted). Thus, the district court properly rejected Sloley's request for a self-defense instruction.

---

4. Sloley cites three cases involving defendants who had seized a law enforcement officer's gun during an attempted arrest and used it against the officer. All three cases, however, resulted in convictions under § 924(c)(1) that were affirmed by the United States Courts of Appeals. *See United States v. Streit,* 962 F.2d 894, 899 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992); *United States v. Molina–Uribe,* 853 F.2d 1193, 1195–96, 1208 (5th Cir. 1988), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Reid,* 517 F.2d 953, 964–65 (2d Cir.1975).

## IV.

Finally, Sloley has argued that the district court erred by enhancing his sentence by three levels for assaulting an official victim under § 3A1.2(b) of the United States Sentencing Guidelines. Sloley has raised two separate objections to the sentence enhancement: first, he has argued that it constituted "double counting" and therefore violated due process; and second, he has argued that the court applied the wrong victim-related adjustment (U.S.S.G. § 3A1.2(b), rather than § 3C1.2). We review the former issue *de novo* and the latter under the clearly erroneous standard. *See United States v. Daughtrey*, 874 F.2d 213, 217–18 (4th Cir.1989).

Sloley has contended that the district court violated due process by both convicting him under 18 U.S.C. § 924(c)(1) and enhancing his sentence under U.S.S.G. § 3A1.2(b) on the basis of the same conduct. Sloley has cited no on-point legal authority for his "double counting" argument. By their terms, there is no inherent or necessary overlap between § 924(c)(1) and § 3A1.2(b)—indeed most § 924(c) violations do *not* involve an "official victim." The mere fact that the drug trafficker in this particular case used a law enforcement officer's gun against that officer should not preclude a court from applying both the firearm statute and the "official victim" adjustment.

Finally, Sloley has argued that, if a victim-related adjustment was appropriate, it should have been a two-level adjustment under § 3C1.2 ("Reckless Endangerment During Flight"), rather than the three-level adjustment under § 3A1.2(b) ("Official Victim"), which the court imposed. Section 3A1.2(b) provides: "If . . . during the course of the offense or immediate flight therefrom, the defendant . . ., knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 3 levels." U.S.S.G. § 3A1.2(b). Section 3C1.2 provides: "If the defendant

recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. If both § 3A1.2(b) and § 3C1.2 apply to a defendant, the court must apply only the former and increase the offense level by three levels. *See* U.S.S.G. § 3C1.2, comment. (n. 1) ("Do not apply this enhancement where . . . another adjustment in Chapter Three . . . results in an equivalent or greater increase in offense level solely on the basis of the same conduct."); *see also United States v. John*, 935 F.2d 644, 646–47 (4th Cir.1991) (instructing district judges to apply a more specific sentencing guideline, *e.g.,* § 3A1.2(b), rather than a more general one, *e.g.,* § 3C1.1).[5]

Under the circumstances of the present case, the only relevant question is whether Sloley "assaulted" Cardwell, within the meaning of § 3A1.2(b). It is undisputed that Sloley resisted arrest, struggled with Cardwell, and grabbed his gun. Cardwell testified at the sentencing hearing that he believed Sloley had actually pointed the gun directly at him. Sloley denied having done so. Given such conflicting testimony, the district court did not clearly err in finding that Sloley had assaulted Cardwell in a manner creating a substantial risk of serious bodily injury. Accordingly, Sloley's conviction and sentence are

### *AFFIRMED.*

---

5. Both guidelines require the creation of a substantial risk of serious bodily injury. Therefore, Sloley's argument favoring the "reckless endangerment" enhancement over the "official victim" enhancement assumes that the "risk of injury" requirement has been met.