**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael GIACOMETTI, Defendant–Appellant.**

No. 93–3167.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1994.

Decided July 1, 1994.

Patricia A. Tomaw, Office of U.S. Atty., Springfield, IL (argued), for plaintiff-appellee.

Joseph S. Miller, Michael J. Costello (argued), Costello Law Office, Springfield, IL, for defendant-appellant.

Before CUDAHY, ESCHBACH and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

A confidential source tipped off DEA agents that defendant Michael Giacometti and his friend John Capranica were planning to go to Chicago on December 12–13, 1992 to buy cocaine. On December 13, Capranica and Giacometti left Springfield and drove to a residence near Chicago, where Giacometti spent 30 minutes inside. The two then headed back down Interstate 55 towards Springfield. Outside of Springfield, the car was pulled over for speeding. At the officer's request, Capranica got out and consented to a search of the car. Giacometti jumped into the driver's seat and sped off.

A high speed chase ensued, with marked squad cars following Giacometti for about 10 miles along local roads. Giacometti travelled up to 100 miles per hour on primarily two-lane highways, through the residential communities of Andrew and Cantrall, and along hilly roads with no shoulders, forcing about 30 cars off the road. He dodged a roadblock by swerving into a ditch, but made it back up to the roadway and proceeded neck and neck with a squad car. An officer testified that at some point, Giacometti threw cocaine out of the window. The chase ended when Giacometti crashed into a squad car.

Giacometti was arrested, and a search of his car yielded about 16.3 grams of cocaine in plastic bags, some of which had been ripped open. Giacometti and Capranica were indicted in a three count indictment alleging conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and assaulting or resisting a federal law enforcement officer in violation of 18 U.S.C. § 111. On the weekend before trial, Giacometti pled guilty to Counts 1 and 3, and the government agreed to dismiss Count 2.

At sentencing, the district court applied U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers) to the assault count, resulting in a base offense level of 6. The offense level was enhanced 3 levels for use of a dangerous weapon (the automobile), U.S.S.G. § 2A2.4(b)(1), and 2 levels for the victim's injuries (the police officer), U.S.S.G. § 2A2.2(b)(3)(A), for a total offense level of 11.

The base offense level on the drug count was 22. The Pre–Sentence Report recommended a 2 level enhancement for obstruction of justice, U.S.S.G. § 3C1.1, and a 2 level enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2. At sentencing, the government argued that the reckless endangerment enhancement should not apply, since it concerned conduct partially covered by the resisting arrest count. The government also argued against an enhancement for obstruction of justice: although Giacometti threw some cocaine out of the window as he was driving, the government argued that this act had not impeded the investigation or prosecution of the case.[1] The district court rejected both the § 3C1.1 and § 3C1.2 enhancements, and found that the adjusted offense level on the drug count was 22.

The offense level for both offenses combined was 22. U.S.S.G. § 3D1.4. The district court gave a 2 level reduction for acceptance of responsibility since Giacometti had pled guilty, U.S.S.G. § 3E1.1(b)(2), resulting in a final adjusted offense level of 20. The district court found that Giacometti had a criminal history category of III, resulting in a guideline range of 41–51 months.

The district court then departed upward 25% to 64 months, finding that the sentence did not reflect the seriousness of the offense. Upon a motion from the government, the district court then departed downward 10% to 58 months since Giacometti had rendered substantial assistance to the government.

---

1. This is a correct reading of § 3C1.1, comment. (n.3(d)), which provides that while the enhancement may apply to destroying or concealing evidence, "if such conduct occurred contemporaneously with the arrest (e.g. attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender." Giacometti's throwing the cocaine out the window would not, standing alone, warrant the enhancement.

U.S.S.G. § 5K1.1. He was also sentenced to 6 years of supervised release.

On appeal, Giacometti challenges the upward departure, arguing that the district court lacked the authority to depart. The district court may depart if it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). We review *de novo* whether the stated grounds justify a departure. *United States v. Willey*, 985 F.2d 1342, 1349 (7th Cir.1993).

The district court departed upward because it found that Giacometti's reckless flight endangered innocent lives to a degree not reflected in the guidelines. The district court explained:

> I believe that the defendant's conduct in his reckless flight to avoid arrest endangered the lives of at least 30 innocent people. I can't—I don't even want to imagine what could have happened if he had lost control of his automobile for one second or if some driver had not been able to remove their car from his path during this flight. And I don't think the guidelines in context of my findings here today, I don't think they adequately consider this factor. I believe that the situation the defendant created here is an aggravating and mitigating [sic] circumstances to a degree not adequately considered by the sentencing commission that should lead to a different result.

Giacometti argues that the Guidelines have already considered these factors in either § 3C1.1 or § 3C1.2, and thus the district court did not have authority to depart.

■ The conduct on which the district court relied to depart—Giacometti's high speed chase and the ensuing danger to bystanders—is clearly the sort of reckless behavior covered by § 3C1.2.[2] Courts facing similar circumstances have found § 3C1.2 applicable. *See, e.g., United States v. Chandler*, 12 F.3d 1427, 1433 (7th Cir.1994) (applying § 3C1.2 when defendant led police on a chase along a two-lane highway through residential areas, at speeds ranging from 35 to 55 mph, swerving to prevent police from passing him); *United States v. Luna*, 21 F.3d 874 (9th Cir.1994); *United States v. Sykes*, 4 F.3d 697, 700 (8th Cir.1993); *United States v. Frazier*, 981 F.2d 92, 96 (3d Cir.1992). Moreover, § 3C1.2 allows a district court to depart upward beyond the 2 level enhancement if there are exceptional circumstances posing a substantial risk of death or bodily injury to more than one person. § 3C1.2 comment. (n.6). Since the Sentencing Commission has considered the dangers high speed chases pose to innocents, the district court lacked authority to depart upward without first applying § 3C1.2. *Accord United States v. Hernandez–Rodriguez*, 975 F.2d 622, 625 (9th Cir.1992).

■ At the sentencing hearing, the government argued that § 3C1.2 could not apply because it addresses conduct already accounted for in part by the resisting arrest count. But in this case, the enhancement is clearly appropriate since Giacometti not only resisted arrest and assaulted law enforcement officers—the conduct prohibited by 18 U.S.C. § 111—but also placed 30 lives in danger and recklessly courted even greater disaster. *Cf. United States v. Wollenzien*, 972 F.2d 890, 891 (8th Cir.1992); *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980). Such conduct seems to be a textbook example of a proper application of § 3C1.2.

■ Giacometti also argued that the district court's grounds for upward departure are addressed in § 3C1.1, obstruction of justice. This is somewhat beside the point, since § 3C1.2, which clearly applies, prohibits

**2.** " 'Reckless' refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4 comment. (n.1); *cf.*

application of both § 3C1.1 and § 3C1.2.[3] In any case, Giacometti's argument had more validity before the 1990 amendments to the Guidelines. Before 1990, § 3C1.1 and its commentary made no mention of flights from arrest, but most courts agreed that merely fleeing from arrest did not warrant an enhancement under § 3C1.1. *See, e.g., United States v. Hagan*, 913 F.2d 1278, 1285 (7th Cir.1990); *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990); *United States v. Garcia*, 909 F.2d 389, 393 (9th Cir.1990); *United States v. John*, 935 F.2d 644, 648 (4th Cir. 1991). However, a few courts applied § 3C1.1 to flights resulting in high speed chases with "almost mortal circumstances" or other obstructive conduct. *United States v. White*, 903 F.2d 457, 462–63 (7th Cir.1990); *United States v. Paige*, 923 F.2d 112, 114 (8th Cir.1991); *United States v. Tellez*, 882 F.2d 141 (5th Cir.1989).

■ In 1990, the Guidelines were amended to address the distinction between "ordinary" and reckless flights. The commentary to § 3C1.1 now provides that the enhancement does not apply to a defendant's conduct fleeing or avoiding an arrest. § 3C1.1 comment. (n.4). Instead, § 3C1.2 should be used to enhance the sort of reckless endangerment during flight that had previously been addressed by § 3C1.1. *United States v. Chandler*, 12 F.3d at 1433 n. 1; *United States v. Bell*, 953 F.2d 6, 8 (1st Cir.1992).

But the commentary to § 3C1.1 contains an apparent exception to the general rule against its application to fleeing or avoiding arrest. Application Note 4 provides:

> The following is a non-exhaustive list of examples of the type of conduct that, *absent a separate count of conviction for such conduct,* do not warrant application of

this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range:

> (a) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;

> (b) making false statements, not under oath, to law enforcement officers ...

> (c) providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;

> (d) *avoiding or fleeing from arrest* (see, however, § 3C1.2 (Reckless Endangerment During Flight)).

(emphasis supplied).

This "absent a separate count of conviction for such conduct" is a curious choice of language.[4] On its face, it appears to mean that the enhancement will not apply if a defendant flees arrest unless the defendant is separately convicted of fleeing arrest. This was the conclusion of the Eighth Circuit, the only court we have found that has addressed this provision. *United States v. Olunloyo*, 10 F.3d 578, 580 (8th Cir.1993). In *Olunloyo*, a defendant who fled arrest was charged with both resisting arrest and the underlying offense. The court held that the "separate count of conviction" condition of Application Note 4 was satisfied and § 3C1.1 could apply. *Id.*

But this "double or nothing" interpretation of § 3C1.1, while grammatically defensible, makes no sense in the context of the Guidelines. Why would the obstruction of justice enhancement apply to conduct *only* if that

---

§ 3C1.2 comment. (n.2) (applying § 2A1.4 definition to § 3C1.2).

**3.** Section 3C1.2 shall not apply "where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct." § 3C1.2 comment. (n.1). *See also United States v. Lilly*, 13 F.3d 15, 19 (1st Cir.1994); *United States v. Sloley*, 19 F.3d 149 (4th Cir.1994). Application of § 3C1.1 as well as § 3C1.2 would violate this rule; application of § 3C1.2 and the resisting

arrest count does not, since that count did not increase the overall offense level.

**4.** The November 1990 amendment inserting this language into § 3C1.1 sheds no light on this provision. U.S.S.G. App. C, Amendment 347, merely states "This amendment clarifies the operation of § 3C1.1 and inserts an additional guideline to address reckless endangerment during flight. The Commission believes that reckless endangerment during flight is sufficiently different from other forms of obstructive conduct to warrant a separate enhancement."

conduct is already addressed in a separate count? If anything, concerns over double counting might be expected to lead in the opposite direction, and § 3C1.1 could have followed § 3C1.2 by specifically prohibiting application of the enhancement when the same conduct is punished elsewhere. *See* § 3C1.2 comment. (n.1). *Olunloyo* concluded that there are not "double counting" concerns when the § 3C1.1 enhancement applies to the drug count rather than to the resisting arrest count, but this technical move alone does not eliminate the problem of double counting the same *conduct.*

Another interpretation of the Application Note is that the enhancement cannot apply solely on the basis of fleeing arrest or providing misleading information, but that if the defendant is charged on the basis of that conduct, the enhancement may still apply to further obstructive conduct. Thus if a defendant merely flees from arrest, the underlying offense will not be enhanced, but if a defendant otherwise obstructs justice—for example, by threatening a witness—in the course of a prosecution for fleeing arrest, the enhancement will apply to that conduct. This would be consistent with Application Note 6, which allows the enhancement to apply to a separate count of clearly obstructive conduct when there is additional obstruction in the prosecution of that count. This approach avoids the double counting problem, but also twists the language of the Application Note too far. The commentary specifically lists the *conduct* that does not warrant application of the enhancement. If a defendant further obstructs justice after being charged with fleeing arrest, as in the example above, then the enhancement is clearly based on the further obstructive conduct, not the conduct listed in Note 4.

Thus the only approach that makes sense of the language seems to be the one taken by the Eighth Circuit. But we are still in the dark about why the Sentencing Commission decided that certain conduct should only be the basis for an enhancement if it is already proven by a conviction. Perhaps the Commission was concerned that these less serious forms of obstructive conduct[5] were not ordinarily serious enough to merit punishment, but if in a particular circumstance they were sufficiently egregious to be criminal, we would be satisfied that they were indeed obstructive. Or, on a related note, the Commission might have thought that the usual evidence available to prove the enumerated offenses will often be unreliable, and therefore that these offenses should be proven beyond a reasonable doubt. All of these explanations, however, may prove too little or too much. In any event, absent any guideposts, we are left with pure speculation about why the Sentencing Commission adopted this provision. *Cf. United States v. Wood,* 24 F.3d 514, 518 (3d Cir.1994) (commenting on a different issue under § 3C1.1, "we do not fully understand the basis for the Commission's limitation on the use of obstruction of justice.... We urge the Commission to redraft the section ... or, at the very least, explain why it should not be applicable.").

What is clear is that, even though § 3C1.1 may apply to fleeing arrest so long as there is also a separate conviction on this count, the court must avoid the "double counting" this provision might otherwise seem to require. Thus the counts for both the obstructive conduct and the underlying offense must be grouped under U.S.S.G. § 3D1.2(c) and the enhancement applied to the offense level of the underlying count, unless the offense level for the obstructive count is higher. Application Note 6 to § 3C1.1 requires this grouping when the defendant is convicted of certain obstructive offenses and an underlying offense.[6] *Cf. United States v. Beckner,* 983 F.2d 1380,

---

**5.** *See* § 3C1.1 comment. (n.2) ("Application Note 4 sets forth examples of less serious forms of conduct to which this enhancement is not intended to apply.").

**6.** Application Note 6 provides:

Where the defendant is convicted for an offense covered by § 2J1 (Contempt), § 2J1.2 (Obstruction of Justice), § 2J1.3 (Perjury or

Subornation of Perjury; Bribery of a Witness), § 2J1.5 (Failure to Appear by Material Witness), § 2J1.6 (Failure to Appear by Defendant), § 2J1.9 (Payment to Witness), § 2X3.1 (Accessory After the Fact), or § 2X4.1 (Misprision of felony), this adjustment is not to be applied to the offense level for that offense except where a significant further obstruction occurred during the investigation, prosecution,

1385 (6th Cir.1993) (requiring grouping of resisting arrest count with substantive offense before enhancement can apply). Had the district court applied the § 3C1.1 enhancement in Giacometti's case, it would have avoided double counting, since it appears that the district court grouped the counts and the resisting arrest count basically dropped out of the sentence.

In any event, the specific ground upon which the district court departed in this case—the risk to innocent civilians from a high speed chase—does not on its own warrant a § 3C1.1 enhancement. But we note that the record as a whole, which describes not only risk to civilians but risk to law enforcement officers and the destruction of evidence, might collectively have justified an enhancement under § 3C1.1. But since § 3C1.2 addresses more directly the specific grounds on which the court chose to depart, we base our decision to remand on the district court's failure to apply § 3C1.2.

▇▇▇ When the district court departs on improper grounds, as it did here, it has misapplied the Guidelines. *Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992). 18 U.S.C. § 3742(f)(1) requires a remand for resentencing whenever a sentence is imposed "as a result of an incorrect application of the sentencing guidelines." *See also United States v. Panadero*, 7 F.3d 691, 697 n. 4 (7th Cir. 1993). But if "the error did not affect the district court's selection of the sentence imposed," the sentence cannot be deemed "a result of" the error, and we need not remand. *Williams*, —— U.S. at —— – ——, 112 S.Ct. at 1120–21. In certain cases we know the error is harmless: when, for example, the district court says that the choice of range did not affect the sentence, *United States v. Mount*, 966 F.2d 262, 265 (7th Cir.1992), or when the district court erred on the high side

or sentencing of the obstruction offense itself (*e.g.*, where the defendant threatened a witness during the course of the prosecution for the obstruction offense). Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the count for the underlying offense increased by the 2–level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

but the sentence could not have been any lower because of a statutory minimum, *United States v. Kozinski*, 16 F.3d 795, 812 (7th Cir.1994). But in this case, we have no such record assuring us that the district court's erroneous interpretation of the Guidelines did not affect the sentence imposed. "If the district court had not erred in its methodology, it may have reached a different sentence. In coming to this conclusion we note that a sentencing court has latitude within the applicable sentencing range in which to identify an appropriate term of incarceration." *United States v. Dawson*, 1 F.3d 457, 466 (7th Cir.1993). If the district court had applied the § 3C1.2 enhancement, Giacometti's Guideline range would have been 51–63 months, and the district court could have chosen any point along that spectrum (or, under certain circumstances, departed even further upward under § 3C1.2). Since we cannot be certain the error was harmless, we must VACATE the sentence and REMAND for resentencing.[7]

§ 3C1.1 comment. (n.6). *See also* § 2J1.6 comment. (n.3); § 3D1.2 comment. (n. 5).

7. Giacometti also challenged the district court's refusal to reduce his sentence 3 levels for acceptance of responsibility. The district court gave only a 2 level reduction since Giacometti did not plead guilty until just before trial. Since on remand the district court will have a clean slate, we need not pass on this issue here.