124 F.3d 206
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES AMERICA, Plaintiff-Appellee,
v.
Guadalupe MARTINEZ, Jr., Defendant-Appellant.
 No. 96-4153.
 United States Court of Appeals, Seventh Circuit.
 Argued June 10, 1997.
Decided July 3, 1997.
 
 1
 Appeal from the United States District Court for the Central District of Illinois.
 
 
 2
 Before CUDAHY, COFFEY, EASTERBROOK, C.J.
 
 ORDER
 
 3
 Pursuant to a written plea agreement, Guadalupe Martinez, Jr., pleaded guilty to conspiring to distribute marijuana in violation of 21 U. § .C. § 846. Martinez was subject to a mandatory minimum of ten years imprisonment (120 months) under 21 U.S.C. § 841(b)(1)(B); however, the government moved for a downward departure from the minimum pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 based on Martinez's substantial assistance to authorities. At the sentencing hearing in January 1995, the district court granted the motion and imposed a sentence of 78 months. Martinez did not file a direct appeal, but did eventually file a motion pursuant to 28 U.S.C. § 2255 based upon his counsel's failure to advise him of his right to appeal. The district court granted the § 2255 motion without objection and vacated the original sentence. The district court held a resentencing hearing in December 1996 and again imposed a 78 month sentence. Martinez filed a timely appeal.
 
 
 4
 In this appeal, Martinez challenges the district court's determination that he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," and therefore was subject to a two-level increase in offense level. U.S.S.G § 3C1.2. But before we can reach this issue, we must consider a jurisdictional issue. According to the government, Martinez's appeal is actually an attack on the extent of the district court's discretionary downward departure pursuant to 18 U.S.C. § 3353(e) and U.S.S.G. § 5K1.1. It is well established that this court lacks jurisdiction to review the extent of a discretionary downward departure. United States v. Rios-Calderon, 80 F.3d 194, 198 (7th Cir.1996) (collecting cases). However, this court does have jurisdiction to review a sentence imposed in violation of law or as a result of an incorrect application of the sentencing guidelines. Id.; 18 U.S.C. § 3742(a)(1), (2). Martinez relies on United States v. Burnett, 66 F.3d 137 (7th Cir.1995), to assert that the sentence was imposed as a result of an incorrect application of the sentencing guidelines (18 U.S.C. § 3742(a)(2)).
 
 
 5
 We conclude that Martinez has the better of this argument, and that this court has jurisdiction over the appeal. Burnett holds that § 3742(a)(2) "provides jurisdiction to entertain a claim that an error in the calculation of the guideline range influenced the sentence." 66 F.3d at 140. It also observes that if the district court gives two reasons for a sentence, and if one reason is correct and the other erroneous, this court will vacate the sentence for resentencing under the correct view unless it is clear that the district court would have imposed the same sentence regardless of which reason was correct. Id. at 139. As a general matter, an incorrect application of the sentencing guidelines necessitates a remand unless "the error did not affect the district court's selection of the sentence imposed.' " United States v. Giacometti, 28 F.3d 698, 704 (7th Cir.1994) (quoting Wlliams v. United States, 503 U.S. 193, 203 (1992)).
 
 
 6
 In Martinez's resentencing hearing, the district court at times seemed to indicate that it would impose a sentence of 78 months regardless of whether the § 3C1.2 enhancement applies. The district court stated that "if I went to 78 for the wrong reason, it doesn't make any difference according to Giacometti." Resentencing Hearing at 7. Upon imposing the sentence, the district court asserted that the reduction was "made in light of the quality of the defendant's cooperation, and it is also consistent with the recommendation of the government," id. at 12; although the second basis depends in part on the applicability of § 3C1.2, the first is not, and might be seen as predominant in the district court's thinking.
 
 
 7
 Yet other statements in the resentencing hearing indicate that the application of § 3C1.2 did matter. The district court noted that it had agreed at the initial sentencing that it "would depart down to the maximum guideline sentence," or more specifically to 78 months, "the top end of the guideline." Id. at 3. The district court then considered the § 3C1.2 issue at some length, which would seem unnecessary if the application of that guideline was not significant to the ultimate decision. See id. at 4-7, 9-10, 11. The district court also stated that it was "still of the opinion that the proper guideline sentence in the case would be 78 [months] or a proper sentence, assuming departure would be [to] 78 [months]." Id. at 7. It may be that the district court would have imposed a 78-month sentence no matter what--especially given its emphasis on the size of the departure (approximately one-third of the 120-month statutory minimum). See id. at 12. However, we believe that there are sufficient indications to the contrary to allow appellate review of the claim that § 3C1.2 should not have applied.
 
 
 8
 As noted earlier § 3C1.2 applies to defendants who "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The PSR concluded that § 3C1.2 should apply for the following reasons:
 
 
 9
 The defendant attempted to evade arrest by fleeing from law enforcement authorities at the time of the offense. This resulted in a high speed car chase in which the defendant drove through 2 neighbor's yard, and through fields. The defendant continued driving after he struck a post or tree.
 
 
 10
 Martinez objected, asserting that "no one was at risk of death or serious bodily injury" from Martinez's "momentary flight," and that "although the defendant's driving through a yard or a field may be characterized as reckless, the conduct should not give rise to such an extreme enhancement." The addendum to the PSR rejected this objection, concluding that "the public" was put at substantial risk when Martinez "fle[d] from police and le[d] agents on a high speed pursuit in which he drove through a yard and left the roadway and drove through fields." The addendum also stated that at a "high speed chase and the ensuing danger to bystanders is clearly the sort of reckless behavior covered by § 3C 1.2."
 
 
 11
 At sentencing, the district court overruled Martinez's objection and adopted the findings of the PSR. At resentencing, the district court gave the following reasons for applying § 3C1.2:
 
 
 12
 [L]ooking at a map of eastern Illinois and taking judicial notice of such geographic fact, [Martinez] fled from somewhere near Milford to somewhere near Hoopeston, and giving him the the benefit of the doubt it was probably about 12 miles, partly on a highway and then across the field. Certainly the law enforcement officers pursuing him were in danger. And when he was on the public highway, users of the public highway were in danger. So that [sic] the application of 3C1.2 seems fairly obvious, I mean that it's rational to apply that.
 
 
 13
 The district court's conclusions at sentencing or at resentencing are not clearly erroneous. Martinez aserts that the district court made no finding that he knew that he was fleeing from law enforcement officers. We doubt that a district court is generally required to make a finding that the defendant knew that he was fleeing from a law enforcement officer, where the defendant does not dispute such knowledge and the issue has not otherwise been raised.[1] In any event, the district court did find at Martinez's initial sentencing (by adopting the PSR) that he "attempted to evade arrest by fleeing from law enforcement authorities at the time of the offense." The district court obviously concluded that Martinez knew that his pursuers were law enforcement officers. Martinez did not challenge this finding when the case returned for resentencing. Thus, the district court had no occasion to reconsider--and did not need to restate--that finding during resentencing.
 
 
 14
 Martinez also contends that there was no evidence that any civilians were present during the chase. The district court, though, could reasonably infer that civilians were present somewhere along the chase through the neighbor's yard, the twelve miles of roadway, and the fields. As in Ornelas v. United States, 116 S.Ct. 1657 (1996), we give due weight to inferences drawn from historical facts by resident judges. Id. at 1663. Moreover, it seems that proof that civilians were present is not required; it is enough that the chase "might very well have resulted in injury to unsuspecting residents who happened to be in the vicinity of the road as [the defendant] sped by." United States v. Chandler, 12 F.3d 1427, 1433-34 (7th Cir.1994).
 
 
 15
 Even assuming that civilians were not present at any point during the chase and that Martinez did not know that he was fleeing from law enforcement officers until he was driving towards Hoopeston, we would uphold the § 3C1.2 enhancement. After leaving the roadway, Martinez drove through fields, crashed into a tree or post, and drove near a deep drainage ditch. The district court could reasonably believe that Martinez was aware that driving in fields, around trees, and near a drainage ditch all presented serious risks to the law enforcement officers. He himself crashed into a tree, and so was given a stark demonstration of the dangers. In sum, Martinez's actions after leaving the roadway support the § 3C1.2 enhancement.
 
 
 16
 The judgment is AFFIRMED.
 
 
 
 [1]
 Notably, Martinez did not object to the statement in the PSR that he admitted to "realizing that the police were in the van as he began driving toward Hoopeston," even though he allegedly did not realize this when the van drove towards him at the outset