**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN DECLAUS GREEN, aka James
Ward, aka John Delucas Green, aka
James Delucas Lopez,

      Defendant-Appellant.

No. 98-5256
(D.C. No. 98-CR-53C)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY**, **EBEL** and **LUCERO**, Circuit Judges.

Defendant-Appellant John DeClaus Green appeals his sentence on one

count of being a felon in possession of a firearm, in violation of 18 U.S.C.

§ 922(g).  He argues that the district court erred in imposing a two-level upward

departure under U.S.S.G. § 5K2.0 for fleeing arrest.  Although we find that the

---

[*]After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal.  See Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G).  The case is therefore ordered submitted without oral argument.  This
Order and Judgment is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

district court impermissibly relied on a departure factor already adequately contemplated under the Sentencing Guidelines, we conclude that the same two-level adjustment was justified under an enhancement provision cited in Green's presentence report. Because we are convinced that the district court therefore would have imposed the same sentence even absent the erroneous departure, we need not remand for resentencing.

## BACKGROUND

In March 1998, the Tulsa Police Department, pursuant to a search warrant, seized an American Express package shipped to a Tulsa address from California. The package contained, inter alia, counterfeit credit cards. Tulsa authorities subsequently conducted a controlled delivery of the package at the residential address listed on the package, and observed Green drive to the residence, pick up the package, examine its contents, and place the package in the trunk of his vehicle. When a marked police unit attempted to stop Green, he led police on a chase, traveling through residential streets at approximately 50 miles per hour and narrowly avoiding a collision with a police car containing two officers. Green ultimately abandoned his vehicle and fled on foot, and resisted arrest when he was finally apprehended.

During their search of Green, police discovered a pawn shop receipt in Green's wallet. The receipt reflected Green's purchase of a .22 caliber rifle some four months prior to his arrest.

Green was charged with two counts of trafficking in counterfeit access devices, in violation of 18 U.S.C. § 1029(a)(1); one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); and one count of making a false statement in connection with the purchase of a firearm, in violation of 26 U.S.C. § 5861(1).

On June 18, 1998, pursuant to a plea agreement, John DeClaus Green pled guilty to the felon-in-possession charge, in exchange for the government's agreement to dismiss the remaining charges.

Green's presentence investigation report ("PSR") recommended a two-offense level enhancement for "obstruction of justice," based upon Green's flight and resisting arrest. Green objected to the enhancement, arguing that there was no nexus between his attempt to flee (to evade arrest for the counterfeit credit cards) and the firearms offense for which he was convicted (purchasing a rifle four months prior to the chase and arrest). At Green's sentencing hearing on November 10, 1998, the district court agreed that the officers were attempting to apprehend Green for trafficking in counterfeit credit cards, not to investigate any weapons offense. The court then stated:

But, having said that, if – it if is correct that you have to have a nexus and there is no nexus here, then the Court must consider the fact that the guidelines don't take into consideration the situation, and therefore under 5K2.0, the Court has the right to depart. . . . And so it seems to the Court that under either theory the Court still has the right to take this into consideration, and therefore I'm going to do that.

. . .

So whether there is a nexus requirement, whether the nexus exists or it doesn't, is really six of one and half a dozen of another, because if it doesn't then the Court has the right to depart upward, and I do so.

(Sentencing Tr. 7-8.)

Green was sentenced to 78 months' imprisonment, 3 years' supervised release, and a fine of $3,000. He now appeals.

## DISCUSSION

Where a district court's sentencing decision rests primarily on a legal conclusion, such as whether a factor is a permissible ground for departure, our review is plenary. See United States v. Whiteskunk, 162 F.3d 1244, 1249 (10th Cir. 1998). A sentencing court's use of an invalid departure ground is an incorrect application of the guidelines, ordinarily requiring remand under 18 U.S.C. § 3742 for further sentencing proceedings. See United States v. Tisdale, 7 F.3d 957, 962 n.5 (10th Cir. 1993). However, remand is not necessary if we conclude that, on the record as a whole, the district court "'would have imposed the same sentence absent reliance on the invalid factors.'" United States v. Smith,

133 F.3d 737, 750 (10th Cir. 1997) (quoting <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996)), <u>cert. denied</u>, 118 S. Ct. 2036 (1998).

A sentencing court may depart from the applicable guideline range "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

Here, the circumstance relied upon by the district court to impose a two-level upward departure (high speed chase/flight from arrest) is in fact a factor addressed by the PSR's recommended enhancement under U.S.S.G. § 3C1.2.[1]  <u>See</u> <u>United States v. Giacometti</u>, 28 F.3d 698, 701 (7th Cir. 1994) (vacating district court's upward departure based on high speed chase, because such conduct was "clearly the sort of reckless behavior covered by § 3C1.2.")  That sentencing guideline provision states:

> **<u>Reckless Endangerment During Flight</u>**
> If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

U.S.S.G. § 3C1.2.

---

[1]The PSR's recommendation quoted language from (and cited to) § 3C1.2 ("Reckless Endangerment During Flight") but mislabeled the adjustment as one for "Obstruction of Justice," which appears at § 3C1.1.

Despite Green's protestations to the contrary, we discern nothing in this provision requiring that the reckless endangerment occur during flight to avoid arrest for the <u>particular offense of conviction</u>.[2]   The reckless endangerment enhancement under § 3C1.2 is simply part of the relevant conduct under § 1B1.3 a court may take into consideration in establishing the appropriate offense level and guideline range for sentencing.  In other words, if a defendant is pursued and arrested for one offense, yet as a result of that arrest, the defendant is charged and convicted of other, different offenses, then the defendant's reckless endangerment during flight -- that is, where the defendant creates a substantial risk of death or serious bodily injury to another person -- is  relevant conduct that may be considered by the sentencing court in establishing the defendant's base offense level.

Thus, Green's flight from arrest is conduct that is addressed by § 3C1.2. Because his "flight from arrest is a factor adequately considered by the Sentencing Commission in formulating the Guidelines, it cannot be used as a basis for departure." <u>United States v. Madera-Gallegos</u>, 945 F.2d 264, 268 (9th Cir. 1991); <u>Giacometti</u>, 28 F.3d at 701 ("Since the Sentencing Commission has

---

[2]We acknowledge that in <u>United States v. Duran</u>, 37 F.3d 557 (9th Cir. 1994), the Ninth Circuit assumed, without holding, that § 3C1.2 requires a nexus between the crime of conviction and the reckless endangerment. <u>See</u> <u>Duran</u>, 37 F.3d at 559 (finding that sufficient nexus existed). However, we have found no case law holding that such a nexus is required.

considered the dangers high speed chases pose to innocents, the district court lacked authority to depart upward without first applying § 3C1.2."). However, it is clear from the record before us that the sentencing judge would have properly imposed the two-point enhancement under § 3C1.2 if he believed he was authorized to do so. Because we are confident that Green would have received the same sentence absent the district court's erroneous departure, we need not remand for resentencing. AFFIRMED.[3]

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[3]Because we conclude that the district court's erroneous departure was harmless, we need not address Green's argument that the district court failed to give adequate notice under Fed. R. Crim. P. 32 of its intent and basis to depart. See Whiteskunk, 162 F.3d at 1254.